UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK SERRANO,

                 **Petitioner,**

      *- against -*

ROBERT A. KIRKPATRICK,

                **Respondent.**

**11 Civ. 2825(ER)(PED)**

**REPORT AND
RECOMMENDATION**

TO:   THE HONORABLE EDGARDO RAMOS
        UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Proceeding *pro se*, Mark Serrano ("Petitioner") seeks a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, with respect to his April 8, 2008 conviction in Dutchess County (Dolan, J.). Petitioner was convicted, after a jury trial, of numerous counts of murder, arson, robbery, perjury, and conspiracy, in connection with the execution of a drug dealer and his family. He is serving an aggregate term of fifty years to life imprisonment. This petition comes before me pursuant to an Order of Reference dated June 1, 2011. (Dkt. 8.) For the reasons set forth below, I respectfully recommend that this petition be **DENIED**.

## II. BACKGROUND

Sometime after midnight on January 19, 2007, Petitioner and his friend Charles Gilleo ("Gilleo") (together, "Defendants") went to the home of Manuel "Tony" Morey, III ("Morey"), located on Route 82 in the Town of Fishkill, New York, after Defendants agreed to forcibly steal narcotics from him. Defendants fatally shot Morey in the neck, fatally shot Tina Morey three times, fatally stabbed two of the Morey's children, Adam and Manuel, and stabbed and crushed the skull of the Morey's third child, Ryan. Defendants then removed the narcotics from the

home and set fire to the home before they fled in the Morey's vehicle.  Ryan Morey, who

survived the stabbing, died from carbon monoxide poisoning.  Defendants then burned the

Morey's vehicle and agreed that they would lie to police and provide false alibis.  In the days

following the murders, both Defendants made statements to state police officers.  Petitioner was

arrested on January 26, 2007.

### A.    Indictment

The May 7, 2007 superceding indictment charged Defendants with the following

offenses:

(1)    20 counts of murder in the first degree, in violation of N.Y. Penal Law §
       125.27(1)(a)(viii) (counts 1-20 of the indictment);[1]

(2)    4 counts of murder in the first degree, in violation of N.Y. Penal Law §
       125.27(1)(a)(v) (counts 21-24 of the indictment);[2]

(3)    5 counts of murder in the second degree, in violation of N.Y. Penal Law §

---

[1]

A person is guilty of murder in the first degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and . . . as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person or persons, causes the death of an additional person or person; provided, however, the victim is not a participant in the criminal transaction . . . .

N.Y. Penal Law § 125.27(1)(a)(viii).

[2]

A person is guilty of murder in the first degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and . . . the intended victim was a witness to a crime committed on a prior occasion and the death was caused for the purpose of preventing the intended victim's testimony in any criminal action or proceeding whether or not such action or proceeding had been commenced . . . .

N.Y. Penal Law § 125.27(1)(a)(v).

125.25(1) (counts 25-29 of the indictment);[3]

(4)    6 counts of murder in the second degree, in violation of N.Y. Penal Law § 125.25(3) (counts 30-35 of the indictment);[4]

(5)    1 count of arson in the first degree, in violation of N.Y. Penal Law § 150.20(1) (count 36 of the indictment);[5]

(6)    1 count of arson in the third degree, in violation of N.Y. Penal Law § 150.10(1) (count 37 of the indictment);[6]

(7)    2 counts of robbery in the first degree, in violation of N.Y. Penal Law § 160.15(1) (counts 38-39 of the indictment);[7]

(8)    2 counts of robbery in the first degree, in violation of N.Y. Penal Law §

---

[3] "A person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person . . . ." N.Y. Penal Law § 125.25(a).

[4]

A person is guilty of murder in the second degree when . . . [a]cting either alone or with one or more other persons, he commits or attempts to commit robbery . . . [or] arson, and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants . . . .

N.Y. Penal Law § 125.25(3).

[5]

A person is guilty of arson in the first degree when he intentionally damages a building . . . by causing an explosion or a fire and when . . . such explosion or fire . . . causes serious physical injury to another person other than a participant . . . and when . . . another person who is not a participant in the crime is present in such building . . . at the time . . . and . . . the defendant knows that fact or the circumstances are such as to render the presence of such person therein a reasonable possibility.

N.Y. Penal Law § 150.20(1).

[6] "A person is guilty of arson in the third degree when he intentionally damages a . . . motor vehicle by starting a fire or causing an explosion." N.Y. Penal Law § 150.10(1).

[7]

A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [c]auses serious physical injury to any person who is not a participant in the crime . . . .

N.Y. Penal Law § 160.15(1).

<div style="margin-left: 2em;">

160.15(2) (counts 40-41 of the indictment);[8]

(9)     2 counts of robbery in the first degree, in violation of N.Y. Penal Law § 160.15(3) (counts 42-43 of the indictment);[9]

(10)     1 count of conspiracy in the fourth degree, in violation of N.Y. Penal Law § 105.10(1) (count 45 of the indictment);[10]

(11)     1 count of perjury in the second degree, in violation of N.Y. Penal Law § 210.10 (count 47 of the indictment);[11] and

(12)     1 count of conspiracy in the fifth degree, in violation of N.Y. Penal Law § 105.05(1) (count 49 of the indictment).[12]

</div>

(Resp't's Aff. in Answer to a Pet. for a Writ of Habeas Corpus ("Resp't's Aff."), at Ex.1 (Dkt. 14).[13])

## B.    Pretrial Proceedings

---

[8] A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [i]s armed with a deadly weapon . . . ." N.Y. Penal Law § 160.15(2).

[9] "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [u]ses or threatens the immediate use of a dangerous instrument . . . ." N.Y. Penal Law § 160.15(3)

[10] "A person is guilty of conspiracy in the fourth degree when, with intent that conduct constituting . . . a class B or class C felony be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct . . . ." N.Y. Penal Law § 105.10(1).

[11]

A person is guilty of perjury in the second degree when he swears falsely and when his false statement is (a) made in a subscribed written instrument for which an oath is required by law, and (b) made with intent to mislead a public servant in the performance of his official functions, and (c) material to the action, proceeding or matter involved.

N.Y. Penal Law § 210.10.

[12] "A person is guilty of conspiracy in the fifth degree when, and with intent that conduct constituting . . . a felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct . . . ." N.Y. Penal Law § 105.05(1).

[13] All exhibits cited herein are attached to Respondent's Affidavit.

Petitioner's counsel filed a pretrial omnibus motion requesting various forms of relief. The court granted the motion to the extent that it dismissed counts 21-24 of the superceding indictment, which had charged the Defendants with first degree murder, in violation of N.Y. Penal Law § 125.27(1)(a)(v), on a theory that the Defendants killed the victims so as to eliminate any potential eyewitnesses.  The court denied the motion to dismiss with respect to the other counts of the indictment.  (Ex. 4, ¶ 2.)

The court also granted the motion to the extent that it ordered a suppression hearing to determine the admissibility of statements Petitioner made to law enforcement.  The hearing was conducted in November 2007.  The court determined that the statements that Petitioner made were voluntary and denied his motion to suppress.[14]  The court also severed the Defendants' cases for trial.  (Ex. 5.)

**C.     The Verdict and Sentence**

The trial began with jury selection on November 13, 2007.  On December 4, 2007, the jury returned a verdict acquitting Petitioner of arson in the first degree (count 36 of the indictment), but finding him guilty of the other offenses charged.  (Tr., at 2232-34 (Dkt. 18).)

In light of Petitioner's acquittal of the first degree arson charge, the court later dismissed the second degree murder conviction that pertained to the felony murder of Ryan Morey during the course of the arson (count 35 of the indictment).  (See Resp't's Aff. ¶ 10.)  Petitioner was then sentenced as follows: indeterminate terms of 25 years to life imprisonment on each of the 20 murder in the first degree convictions (counts 1-20 of the indictment); indeterminate terms of 25 years to life imprisonment on each of the ten convictions for second degree murder (counts

---

[14] Petitioner offered various versions of events that occurred on the night of the murder in his statements.  (Ex. 5.)

25-34 of the indictment); an indeterminate term of 5 to 15 years imprisonment for the third

degree arson conviction (count 37 of the indictment), which would run concurrent with all of the

other sentences; determinate terms of 25 years on each of the six first degree robbery convictions

(counts 38-43 of the indictment), which would run concurrent with all of the other sentences; an

indeterminate term of 1 1/3 to 4 years imprisonment for the fourth degree conspiracy conviction

(count 45 of the indictment), which would run concurrent with all of the other sentences; an

indeterminate term of 1 1/3 to 4 years imprisonment for the second degree perjury conviction

(count 47 of the indictment), which would run concurrent with all of the other sentences; and a

determinate term of 1 year for the fifth degree conspiracy conviction (count 49 of the

indictment), which would run concurrent with all of the other sentences.  The court also ordered

that the sentences for the first degree murder convictions for counts 1-8 of the indictment run

concurrent to each other, that the sentences for the first degree murder convictions for counts 9-

20 run concurrent to each other, and that the sentences for counts 1-8 run consecutive to the

sentences for counts 9-20.  Accordingly, the court sentenced Petitioner to an aggregate term of

50 years to life imprisonment.  (Ex. 1.)

D.    **Direct Appeal**

Through counsel, Petitioner appealed his conviction to the New York State Appellate

Division, Second Department, on the following grounds:

(1)    the court erred when "it failed to follow the mode of procedure set forth in
People v. O'Rama, 78 N.Y.2d 270 [1991] and United States v. Ronder, 639
F.2d 931, 934 [2d Cir. 1981]" by "conferring off the record with counsel"
after the court received a jury note that asked the court to explain the
elements of Arson in the first degree, (Appellant Serrano's Main Br. ("App.
Br."), at 73 (attached to Resp't's Aff., at Ex. 6); see id. at 73-77);

(2)    the court erred by failing to suppress Petitioner's pretrial statements that were
"fruit of continuous unmirandized custodial interrogation and psychological
coercion, a trick coupled with a promise in violation of the 4th and 14th

6

Amendments to the U.S. Constitution and in violation of [N.Y. Crim. Proc. Law §] 60.45(1) under People v. McGuffin, 55 A.D.2d 792 (Third Dept. 1976), and Arizona v. Fulmanente, 499 U.S. 279, 286-287 (1991)," (id. at 77; see id. at 77-83);

(3)    the evidence was legally insufficient and against the weight of the evidence with respect to Petitioner's "intent to rob, to commit murder [in the first degree] or to commit arson," (id. at 83; see id. at 83-87);

(4)    the sentence was excessive, (see id. at 87-90);

(5)    "[t]he Indictment was multiplicitous as to the Murder [in the first degree] counts, under People v. John Taylor, [No. 1845/2000, 2002 WL 825039 (Sup. Ct. Queens Cnty. Mar. 6, 2002)] under the NYS Assembly and Senate Bill Memorandum to [N.Y. Crim. Proc. Law §] 300.40," (id. at 90); and

(6)    the grand jury instructions were legally insufficient, (see id.).

The Second Department affirmed the judgment in a written decision on February 23, 2010. People v. Serrano, 897 N.Y.S.2d 455 (App. Div. 2d Dep't 2010). Leave to appeal to the New York Court of Appeals was denied on May 13, 2010. People v. Serrano, 14 N.Y.3d 892 (2010). Petitioner did not seek a writ of *certiorari* to the United States Supreme Court, nor has he sought state collateral relief. (See Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") ¶¶ 10(g), 11 (Dkt. 2).)

## E.    *Habeas Corpus* Proceedings

By petition dated March 29, 2011, Petitioner seeks a federal writ of *habeas corpus*.[15] He raises the same claims that were raised on direct appeal. (Id. ¶ 13.)

## III. DISCUSSION

## A.    Applicable Law on *Habeas Corpus* Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

---

[15] The petition was timely filed. See 28 U.S.C. § 2244(d).

determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized below.

**1.      *Timeliness Requirement***

A federal *habeas* petition is subject to AEDPA's strict, one-year statute of limitations. See 28 U.S.C. § 2244(d).  The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply.  See id. § 2244(d)(1).  Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition.  See id. § 2244(d)(2).  The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

8

<u>Id.</u> § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2262 (2010) (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." <u>Harper v. Ercole</u>, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." <u>Id.</u>  Finally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." <u>Id.</u> at 138 (internal quotation marks and citations omitted); <u>see also</u> <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2d Cir. 2000) (the applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

### 2. *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>see</u> § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment

of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right

protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp. 2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.    *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it.  Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law.  Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740).  A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).  The determination of whether a state procedural rule is "firmly established and regularly followed" requires inquiry into "the specific circumstances presented in the case."  Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee v. Kemma, 534 U.S. 362, 386-87 (2002)).  The Second Circuit has identified three "guideposts" for making this determination:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether the state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, legitimate government interest.

Id. (citing Lee, 534 U.S. at 381-85).

### 4.    *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas*

relief, the court must determine the proper standard of review under AEDPA for each of the

petitioner's claims.  § 2254(d)(1)-(2).  This statute "modifie[d] the role of federal habeas corpus

courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of

review.  Williams v. Taylor, 529 U.S. 362, 402 (2000).  For petitions filed after AEDPA became

effective, federal courts must apply the following standard to cases in which the state court

adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when the state

court has both adjudicated the federal claim "on the merits," and reduced its disposition to

judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  Where the state court "did not

reach the merits" of the federal claim, however, "federal habeas review is not subject to the

deferential standard that applies under AEDPA . . . .  Instead, the claim is reviewed de novo."

Cone v. Bell, 129 S. Ct. 1769, 1784 (2009); see § 2254(d).

Under the first prong of the AEDPA deferential standard, a state court decision is

contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme

Court] on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision

involves an "unreasonable application" of Supreme Court precedent if the state court "identifies

the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the

13

facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle

from [Supreme Court] precedent to a new context where it should not apply or unreasonably

refuses to extend that principle to a new context where it should apply." Id. at 407.

> Under § 2254(d), a habeas court must determine what arguments or theories
> supported or . . . could have supported . . . the state court's decision; and then it must
> ask whether it is possible fairminded jurists could disagree that those arguments or
> theories are inconsistent with the holding in a prior decision of [the Supreme] Court.
> . . . If this standard is difficult to meet, that is because it was meant to be.  As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings. . . .  It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with [the Supreme] Court's
> precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus
> is a guard against extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal. . . .  As a condition for
> obtaining habeas corpus from a federal court, a state prisoner must show that the
> state court's ruling on the federal claim being presented in federal court was so
> lacking in justification that there was an error well understood and comprehended in
> existing law beyond any possibility of fairminded disagreement.

Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (internal quotation marks and citations

omitted).

Under the second prong of AEDPA, the factual findings of state courts are presumed to

be correct.  § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (citing Green

v. Scully, 850 F.2d 894, 900 (2d Cir. 1988) ("'[t]he factual findings of the New York Courts are

presumed to be correct'").  The petitioner must rebut this presumption by "clear and convincing

evidence." § 2254(e)(1).

**B.      Analysis of Petitioner's Claims**[16]

**1.      _Jury Note (Claim 1)_**

Petitioner argues that the court erred by failing to discuss with counsel a note that it

---

[16] I identify the claims as I list them in Section II(D) above.

received from the jury before it responded to the note.  (See App. Br., at 73-77.)  The note at

issue asked the court to explain the elements of arson in the first degree, a charge on which

Petitioner was ultimately acquitted.  Respondent contends, in part, that this claim does not

present a basis upon which *habeas* relief may be granted.  (See Resp't's Mem., at 134-39.)  I

agree with Respondent that the claim should be denied.

 The jury note at issue stated the following: "If an arson defendant believes that everyone

in a building is already dead, does burning a building constitute arson in the first degree, yes or

no."  (Tr., at 2230.)  The court read the note into the record in the presence of counsel and

Petitioner.  However, without first conferring with counsel on the record, the court issued the

following supplementary instruction:

> Unfortunately, I can't answer the question as it's posed.  Let me try this: A
> person is defined in our law as a human being who has been born, and is alive.  Now,
> the factual issue that the jury must decide in this case is whether this defendant,
> aiding, abetting and acting in concert with his codefendant, believed–I'm sorry, what
> the defendant or codefendant believed–
> . . .
> Excuse me a moment. . . .  The issue you must decide, factual issue you must
> decide is as to what this defendant or his codefendant believed, and–strike that.  You
> must make a factual determination as to what this defendant or his codefendant
> believed, and you must also consider whether or not there was a reasonable
> possibility that someone was still alive at the time the fire was set.  I don't know if
> that helps.  If not, let me know–

(Id. at 2230-31.)  Defense counsel then asked for a side bar conference.  After an off-the-record

conference was held, the court issued the following supplementary instruction: "Mr. O'Neil

correctly points out to me I said you must make a factual determination.  You must, if you can,

make out a factual determination."  (Id. at 2231.)  The jury then returned to deliberations and

shortly thereafter reached its verdict.  The jury acquitted Petitioner of arson in the first degree

(count 36 of the indictment).  (See id. at 2231-33.)  Later, the court set aside the corresponding

felony murder conviction (count 35 of the indictment).

It is clear from the Second Department's written decision that it actually denied this claim on direct appeal by relying on the state's procedural rule requiring claims to be properly preserved for appellate review.  Serrano, 897 N.Y.S.2d at 456 (stating that "the defendant failed to make a sufficient record to permit review of his claim that the trial court erred in its response to a jury note").  The court's reliance on this procedural rule constitutes an independent and adequate ground for its decision denying the claim, which precludes this Court from considering the claim on *habeas* review.  See, e.g., Andrade v. Heath, No. 11 Civ. 1086(KBF), 2012 WL 3848397, at *8 (S.D.N.Y. Aug. 20, 2012) (collecting cases and holding that state court's denial of claim on ground that appellant failed to provide appellate court with sufficient record constituted independent and adequate procedural ground for dismissal of claim on *habeas* review).[17]  Petitioner does not allege cause and prejudice for this default, nor has he argued a resulting fundamental miscarriage of justice.  Accordingly, the claim remains unreviewable by this Court and must be denied.

Even assuming, *arguendo*, that the claim is not procedurally barred, Petitioner cannot establish that federal *habeas* relief is warranted.  As an initial matter, Petitioner's status as "a person in custody" for purposes of AEDPA, 28 U.S.C. § 2254(a), is not the result of a conviction for an offense that was the subject of this jury note.  As noted above, Petitioner was *acquitted* of the first degree arson charge and the court later dismissed the related felony murder conviction.

Moreover, Petitioner cannot show that he was prejudiced from any error involving the jury note.  It is true that a criminal defendant has a Sixth Amendment right to ensure that jury

---

[17] Copies of unreported cases cited herein will be mailed to Petitioner as a *pro se* litigant. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam).

notes are answered in open court and that counsel is given the opportunity to be heard before the

judge responds to the note.  United States v. Robinson, 560 F.2d 507, 516 (2d Cir. 1977) (*en*

*banc*) (citing Rogers v. United States, 422 U.S. 35, 39 (1975)).  Accordingly, the Second Circuit

has identified a specific procedure that courts should follow when responding to jury notes:

> Specifically, (1) the jury's inquiry should be submitted in writing; (2) before the jury
> is recalled, the note should be read into the record in the presence of counsel and
> defendant; (3) counsel should be afforded an opportunity to suggest appropriate
> responses; and (4) after the jury is recalled, the request should again be read in their
> presence to assure that it accurately reflects their inquiry and that they all appreciate
> the question being asked.

Munoz v. Burge, No. 02 Civ. 6198(NGG)(LB), 2007 WL 7244783, at *10 (E.D.N.Y. Aug. 27,

2007) (Report & Recommendation), adopted as modified by 2010 WL 3394696 (E.D.N.Y. Aug.

20, 2010), aff'd, 442 F. App'x 602 (2d Cir. 2011) (citing United States v. Leung, 40 F.3d 577,

584 (2d Cir. 1994)); see also United States v. Ronder, 639 F.2d 931, 934 (2d Cir. 1981).  New

York courts follow the same approach.  See People v. O'Rama, 8 N.Y.2d 270, 277 (1991) (citing

Rogers, 422 U.S. at 39, Ronder, 639 F.2d at 934, and Robinson, 560 F.2d at 516).[18]  However, a

court's failure to follow this exact procedure does not automatically require reversal of a

conviction.  The criminal defendant must also establish that he suffered sufficient prejudice.

Munoz, 2007 WL 7244783, at *10 (citing United States v. Adeniji, 31 F.3d 58, 65 (2d Cir.

1994)).  In this case, although the trial court did not confer with counsel prior to responding to

the jury note, it did read the note into the record in the presence of both counsel and the jury.

This gave Petitioner's trial counsel an opportunity to suggest a further response, which he did.

---

[18] Petitioner's brief on direct appeal cited, among other cases, Rogers, Ronder, and
Robinson.  (See App. Br., at 74.)  Citation to relevant federal cases is sufficient to alert the state
court to the federal nature of a claim.  Daye, 696 F.2d at 194.  For this reason, I do not agree
with Respondent that the federal nature of this claim remains unexhausted.

Petitioner was also acquitted of the charge that was the subject of the jury note, and the court later dismissed the felony murder conviction associated with the arson.  For these reasons, Petitioner cannot establish that he was prejudiced from the court's failure to first confer with counsel.

Finally, to the extent that Petitioner also argues that the trial court erred by failing to comply with N.Y. Crim. Proc. Law § 310.30,[19] that argument must be denied.  "A claim premised on a violation of [§ 310.30] does not allege a violation of a federally protected right," as required by AEDPA.  Cornado v. Bellnier, No. 10 Civ. 5265(RA)(HBP) 2012 WL 6644637, at *5 (S.D.N.Y. Sept. 20, 2012) (Report & Recommendation), adopted by 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012); see also, e.g., id. (collecting cases).  Accordingly, the argument is a state law claim that is not cognizable upon federal *habeas* review.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

For the reasons set forth above, Claim 1 should be denied.

2.   ***Petitioner's Statements to Law Enforcement (Claim 2)***

Petitioner argues that the court erred by admitting into evidence a series of inconsistent, contradictory, and inculpatory oral and written statements that Petitioner made to law

---

[19]

  At any time during its deliberation, the jury may request the court for further instruction or information of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case.  Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper. . . .

N.Y. Crim. Proc. Law § 310.30.

enforcement in the days following the murders.  (See App. Br., at 77-83; Tr., at 1410-96 (Dkt.

20); see also Ex. 5.)  Respondent contends, in part, that this claim is procedurally barred from

habeas review.  (See Resp't's Mem., at 139-50.)  Respondent is correct.

Before the trial court, Petitioner maintained that he was in custody when he spoke to the

police because he specifically asked to leave the police barracks and his requests were denied.

(See Pretrial Mem. of Law, at 51-57 (Dkt. 27).)  Switching course, Petitioner then argued on

direct appeal–as he argues now on habeas review–that although the police informed him he was

free to leave, "they effectively held him in involuntary constructive custody."  Specifically,

Petitioner argued on appeal that the investigators falsely told him that Gilleo was also being

questioned and that if Petitioner "didn't 'tell the truth,'" they would release Gilleo and would fail

to protect Petitioner from him.  This led Petitioner to "infere[ ] that they would leave Gilleo to

kill him." (App. Br., at 78.)  A comparison of Petitioner's brief on direct appeal with his pretrial

omnibus motion and the record of the suppression hearing confirms that this constructive

custody argument was not presented to the trial court.  (Compare id. at 77-83, with Pretrial Mem.

of Law, at 51-57, and Nov. 7-8, 2007 Hr'g Tr. (Dkt. 26).)

It is clear from the last-reasoned state court decision to address this claim that the Second

Department denied it as "unpreserved for appellate review."  Serrano, 897 N.Y.S.2d at 456; see

Ylst, 501 U.S. at 803.  Although the court went on to deny this claim on the merits, see Serrano,

897 N.Y.S.2d at 456 (stating that "[t]he defendant's remaining contention is unpreserved for

appellate review and, in any event, is without merit"), its primary reliance on this state

procedural law constitutes an independent ground for its decision, see Harris, 489 U.S. at 264

n.10 (state court decision that relies on a procedural rule to dismiss a claim, but which, in the

alternative, also proceeds to dismiss the claim on the merits, relies on the independent state law

ground for dismissal); <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 810 n.4 (2d Cir. 2000) (noting that when a state court opines that a claim is "not preserved for appellate review" and then rules "in any event" that the claim also fails on its merits, the claim rests on independent state law rule which precludes federal *habeas* review).  This New York State "rule of preservation" requires that to preserve a claim for appellate review, the defendant must first present the same argument to the lower court in time to enable that court to cure the alleged error.  <u>People v. Martin</u>, 50 N.Y.2d 1029, 1030-31 (1980) (defendant's failure to the raise same argument in his suppression motion that he later raised on direct appeal foreclosed appellate review of the claim).  New York appellate courts routinely apply this rule to claims involving pretrial suppression hearings.  <u>See, e.g.</u>, <u>Hartley v. Senkowski</u>, No. 90 Civ. 395, 1992 WL 58766, at *8-9 (E.D.N.Y. Mar. 18, 1992) (collecting cases).  The Second Department's reliance on this rule therefore presents an adequate state law ground that prevents this Court from reviewing the merits of the claim upon federal *habeas*.  <u>See, e.g.</u>, <u>Underwood v. Artuz</u>, No. 95 Civ. 7866(SAS), 1996 WL 734898, at *2-3 (S.D.N.Y. Dec. 24, 1996) (state court's decision that denied <u>Miranda</u> claim due to the petitioner's failure to raise the same argument at his suppression hearing constituted independent and adequate ground for dismissal upon *habeas* review); <u>Hartley</u>, 1992 WL 58766, at *9.  Petitioner does not assert cause and prejudice, nor a fundamental miscarriage of justice, that would allow this Court to circumvent his procedural default and review the merits of this claim.  Accordingly, Claim 2 must be denied.

###    3.      ***Legally Insufficient Evidence (Claim 3)***

Petitioner argues that the evidence presented at trial was legally insufficient to establish his intent to rob, murder, or commit arson.  He also argues that the jury's verdict was against the weight of the evidence.  (<u>See</u> App. Br., at 83-87.)  Respondent contends, in part, that this claim

remains procedurally barred and is otherwise not cognizable upon federal *habeas* review.  (See Resp't's Mem., at 150-90.)  Respondent is correct.

It is clear from the Second Department's written decision that it actually relied upon the state's contemporaneous objection rule to deny this claim on direct appeal.  Serrano, 897 N.Y.S.2d at 456 (stating that "[t]he defendant's contention that the evidence was legally insufficient to establish his guilt beyond a reasonable doubt is unpreserved for appellate review (see CPL 470.05(2))").[20]  While the court went on to alternatively dismiss the claim on the merits, see id. (stating that "[i]n any event, viewing the evidence in the light most favorable to the prosecution . . . , we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt"), its reliance on the state procedural rule constitutes an independent and adequate ground for its decision denying the claim, and therefore precludes this Court from considering it on *habeas* review.  See Harris, 489 U.S. at 264 n.10; Fama, 235 F.3d at 810 n.4; see also Wainwright v. Sykes, 433 U.S. 72, 86 (1977) (contemporaneous objection rule constitutes adequate procedural ground for dismissal); Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (same).  Petitioner does not assert cause and prejudice, nor a resulting fundamental miscarriage of justice, that would allow this Court to circumvent his procedural

---

[20] New York's contemporaneous objection rule provides:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

N.Y. Crim. Proc. Law § 470.05(2).  Accordingly, this rule requires "an objection to a ruling or instruction of a criminal court . . . be raised contemporaneously with the challenged ruling or instruction in order to preserve the objection for appellate review."  Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (citing People v. Jones, 440 N.Y.S.2d 248 App. Div. 2d Dep't 1981)).

default and review the merits of the claim.  Accordingly, Petitioner's legal insufficiency argument remains unreviewable and must be denied.

It is also well-established that a weight of the evidence claim is exclusively a matter of state law.  It therefore does not present a federal question that is necessary for federal *habeas* review.  See, e.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011), cert. denied, 132 S. Ct. 1151 (2012) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (weight of evidence claim is a state law claim arising under N.Y. Crim. Proc. Law § 470.15 and therefore does not present a federal question); Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) (a weight of the evidence claim is "an error of state law, for which habeas review is not available"); see also Estelle, 502 U.S. at 67-68 ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  Accordingly, Petitioner's weight of the evidence argument must be denied.

Claim 3 must be denied.

### 4.    *Excessive Sentence (Claim 4)*

Petitioner argues that his sentence was excessive.  (See App. Br., at 87-90.)  Respondent contends, in part, that this claim fails to state a question that is cognizable upon federal *habeas* review.  (See Resp't Mem., at 190-94.)  Respondent is correct.

It is well-settled that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam); see also United States v. McLean, 287 F.3d 127, 136 (2d Cir. 2002) (internal quotation omitted) ("there is no constitutionally cognizable right to concurrent, rather than

consecutive, sentences").  At the time of the offense, New York law permitted terms of twenty-

five years to life consecutive sentences for murder in the first degree convictions.  See N.Y.

Penal Law § 125.27 (classifying murder in the first degree a class A-I felony); id. § 70.00(1)

(requiring indeterminate sentences for felony convictions); id. § 70.00(2)(a) (maximum term of

imprisonment for a class A felony conviction is life imprisonment); id. § 70.00(3)(a)(i)

(minimum term of imprisonment for a conviction of murder in the first degree under § 125.27 is

between 20 and 25 years); id. § 70.25(1) (court has the authority to impose either concurrent or

consecutive sentences).

Accordingly, Claim 4 must be denied.

**5.**     ***Multiplicitous Indictment (Claim 5)***

Petitioner argues that *habeas* relief is warranted because counts 1-20 of the indictment

that charged him with murder in the first degree were multiplicitous.  (See App. Br., at 90.)

Respondent contends that this claim must be denied because: (1) the federal nature of the claim

was not fairly presented to the state courts, (2) the claim fails to state a question that is

cognizable upon federal *habeas* review, and (3) the charges were not multiplicitous.  (See

Resp't's Mem., at 194-96.)  I agree with Respondent that the claim should be denied.

As an initial matter, I note that Petitioner's brief on direct appeal was sufficient to alert

state courts to the federal nature of this claim.  See Willette v. Fischer, 508 F.3d 117, 121 (2d

Cir. 2007) (quoting Daye, 696 F.2d at 194) (a claim arguing that certain counts of an indictment

were "multiplicitous" "fairly presents" the federal nature of the claim because such an argument

"'assert[s] . . . the claim in terms so particular as to call to mind'" the protection afforded by the

Double Jeopardy Clause of the Fifth Amendment).  The Second Department's written decision

on Petitioner's direct appeal represents the last-reasoned state court decision to address Claim 5.

See Ylst, 501 U.S. at 803.  It is clear that the court denied this claim on the merits.  See Serrano, 897 N.Y.S.2d at 456.  Accordingly, I address Claim 5 pursuant to AEDPA's deferential standard of review.

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."  United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999).  A multiplicitous indictment "violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once."  Id.  Such an indictment may also "improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes."  United States v. Reed, 639 F.2d 896, 904 (2d Cir. 1981).

"In passing on a double jeopardy claim of this type, the key inquiry is not whether the same conduct underlies the challenged counts; rather, it is 'whether the offense–in the legal sense, as defined by Congress–complained of in one count is the same as that charged in another.'"  Timmons v. Lee, No. 10 Civ. 1155(JG), 2010 WL 3813963, at *9 (E.D.N.Y. Sept. 23, 2010) (quoting Chacko, 169 F.3d at 146).  "Accordingly, when the same statutory violation is charged twice, the critical question is 'whether the facts underlying each count were intended by Congress to constitute separate units of prosecution.'"  Id. (quoting United States v. Ansaldi, 372 F.3d 118, 124 (2d Cir. 2004)).

Here, Petitioner was charged with and convicted of 20 counts of first degree murder, in violation of N.Y. Penal Law § 125.27(1).  Under this statute, a person is guilty of first degree murder when, with intent to cause the death of another person, he causes the death of that person or a third person, and an aggravating factor is also present.  The aggravating factor relevant to Petitioner's convictions is that, "as part of the same criminal transaction, the defendant, with

24

intent to cause serious physical injury to or the death of an additional person or persons, causes

the death of additional person or persons." N.Y. Penal Law § 125.27(1)(a)(viii). Accordingly,

"each charge under th[is] statute involves a primary victim whose death is the result of an intent

to kill and an additional victim whose death as part of the same transaction is the result of either

an intent to kill or an intent to cause serious physical injury or death." Timmons, 2010 WL

3813963, at *8. "[T]he critical question," therefore, "is whether different permutations of

primary and secondary victims in multiple-homicide cases were intended by the New York

Legislature, in enacting Penal Law § 125.27, to constitute separate units of prosecution." Id. at

*9 (quotation omitted). After considering this same issue, the district court in Timmons v. Lee

determined that this question is "is a matter of state law" that should not be revisited upon

federal *habeas* review. Id. at *9. I agree. The extent to which the New York State Legislature

intended that "a subsequent § 125.27 count that names the same primary victim as an earlier

count but a different secondary victim . . . constitute[s] a separate unit of prosecution," is

precisely the kind of state court decision to which a federal *habeas* court must defer. Id.

     In any event, and as the court in Timmons also determined, the state court's decision

denying this claim cannot be said to have been contrary to, or an unreasonable application of,

clearly established federal law. There exists no Supreme Court case that has decided a Double

Jeopardy question in the context of units of prosecution and primary and secondary victims, such

as that contemplated by N.Y. Penal Law § 125.27(1)(a)(viii). See id. at *10. Accordingly, "in

an absence of clearly established federal authority on the interaction between this type of first-

degree murder statute and the Double Jeopardy Clause, the Appellate Division's decision

[denying this claim] cannot be deemed objectively unreasonable." Id.

     Claim 5 should be denied.

6.     _**Grand Jury Instructions (Claim 6)**_

Petitioner argues that the court erred in failing to review the legal sufficiency of the instructions given to the grand jury. (See App. Br., at 90.)  Respondent contends, in part, that this claim fails to state a question that is cognizable upon federal *habeas* review. (See Resp't's Mem., at 196-97.)  Respondent is correct.

It is well-settled that a claim involving an error in a grand jury proceeding is not cognizable upon federal *habeas* review.  There is no federal constitutional right to a grand jury proceeding.  See Alexander v. Louisiana, 405 U.S. 625, 633 (1972); Hurtado v. California, 110 U.S. 516 (1884); LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002).  A defendant's guilt or innocence is not determined by a grand jury, and "any defect in the grand jury proceeding [is] cured by petitioner's subsequent conviction."  Bingham v. Duncan, No. 01 Civ. 1371(LTS)(GAY), 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003).  Accordingly, such errors do not provide a basis for a federal court to find that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  § 2254(a); see also, e.g., Robinson v. LaClair, No. 09 Civ. 3501(KAM), 2011 WL 115490, at *8 (E.D.N.Y. Jan. 13, 2011) (noting that "[c]laims concerning state grand jury proceedings do not entitle a petitioner to federal habeas relief," and collecting cases).

Accordingly, Claim 6 must be denied.

## IV.  CONCLUSION

For the reasons set forth above, I conclude–and respectfully recommend that Your Honor should conclude–that the petition should be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See

26

28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Dated:
White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the

parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen

(17) days, from service of this Report and Recommendation to serve and file written objections.

See also Fed. R. Civ. P. 6(a), (b), (d). Such objections, if any, along with any responses to the

objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers

of the Honorable Edgardo Ramos, at the Honorable Charles L. Brieant, Jr. Federal Building and

United States Courthouse, 300 Quarropas Street, White Plains, New York 10601 and to the

chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Ramos.

Mark Serrano, *pro se*
08-A-2043
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004

27